UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61670-CIV-COHN/SELTZER

GEMB LENDING, INC.,

       Plaintiff,

       v.

RV SALES OF BROWARD, INC., a
Florida Corporation, DANIELLE TORANO
and JAIME TORANO,

       Defendant/Third Party Plaintiff,

vs.

GIGI STETLER and WACHOVIA
DEALER SERVICES, INC.

       Third Party Defendants.

_____/

## ORDER ON SUMMARY JUDGMENT MOTIONS

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment [DE 44], RV Sales of Broward, Inc.'s Cross-Motion for Summary Judgment [DE 56/57], and Defendants/Counter-Plaintiffs Jaime and Danielle Torano's Motion for Summary Judgment [DE 72]. The Court has carefully considered the motions, responses, and replies thereto, along with the argument of counsel at a hearing held on August 20, 2010, and is otherwise fully advised in the premises.

## I. BACKGROUND

This action involves GEMB Lending Inc.'s ("GEMB") attempt to collect past due payments on a loan for a recreational vehicle ("RV") purchased by Defendants Jamie

and Danielle Torano ("Toranos") from RV Sales of Broward, Inc. ("RV Sales"), a dealer of recreational vehicles.   GEMB's claims include breach of contract against the Toranos for failure to pay the loan (Count I) and breach of contract against RV Sales for failure to perfect a security interest (Counts II and III).  The Toranos filed an Amended Answer and Affirmative Defenses to the Complaint, a Counterclaim against GEMB, a Third Party Complaint against Wachovia Dealer Services, Inc. and Gigi Stetler, and Cross-Claims against RV Sales [DE 39]. The Toranos' claims against RV Sales and Stetler include breach of fiduciary duty, breach of oral contract, indemnity, conversion and fraud in the inducement, centering around the claim that RV Sales and Stetler failed to use the proceeds of the Wachovia transaction to pay off GEMB's loan.[1]  RV Sales and Stetler filed a cross-claim against the Toranos for indemnification and/or contribution for any damages recovered by GEMB against RV Sales or Stetler.

After completion of discovery, all parties moved for summary judgment.  Most of the facts in this case are not in dispute.  The Toranos had originally purchased a new 2007 RV, but after multiple repairs, returned the 2007 RV for a new 2008 RV.[2] Complaint, ¶¶ 13-16.  The Toranos had a previous social and business relationship with Gigi Stetler, the principal of RV Sales.  The Toranos executed a Substitution of Collateral Agreement on March 19, 2008, believing their loan with GEMB would now be

---

[1]  The Toranos' claims against GEMB and Wachovia are for interpleader as both lenders claim an interest in the Toranos' payments on the outstanding loan(s). Wachovia filed cross claims against RV Sales and Stetler for indemnification and fraud [DE 25], but dismissed those claims without prejudice by stipulation [DE 49].

[2]   There appears no dispute regarding the mechanical problems with the 2007 RV.  The RV was at the factory being repaired from November of 2007 through at least March of 2008.  Deposition of Gigi Stetler at p. 76 [DE 67-3].

secured by the 2008 RV [DE 59-1].  The Toranos continued to pay GEMB.  GEMB understood a substitution of collateral would be processed, in which case their 2007 loan would be secured by the 2008 RV, though GEMB did not execute the document until May 28, 2010 [DE 67-4].  There is no date next to the signature of Gigi Stetler on either copy of the document.

GEMB did not initially approve the Substitution of Collateral Agreement because it needed to verify certain information supplied by RV Sales.  On May 5, 2008, Stetler contends that Fleetwood, the 2008 RV manufacturer, contacted her and demanded payment or it would report the RV stolen.  Deposition of Gigi Stetler at p. 86, Exhibit 3 to the Torano's Response to Plaintiff's Motion for Summary Judgment [DE 67-3].  Stetler happened to be with the Toranos in Kentucky at the time, and offered the Toranos the choice of returning the 2008 RV and giving them back the 2007 RV (which at this point was back on RV Sales' lot), or "get a new loan at a different bank and I could take that money and send it to Fleetwood and you will still own the '07 and we will do just like we've done with all of your other motor homes and basically pay it off when we sell it and I'll make the payments on the 2007 until we sell it."  Id. at 87.

The Toranos assert that in May of 2008, RV Sales and Stetler persuaded them to refinance their loan through Wachovia Dealer Services ("Wachovia").  A bill of sale was created for this transaction on May 15, 2008 [DE 67-8].  This document states that the Toranos were credited $485,000 for their trade-in, with a balance of $420,000 owed on the trade-in to GEMB Lending, Inc.  The Retail Installment Contract and Security Agreement ("RICSA") between the Toranos, RV Sales and Wachovia stated that of the total amount of $421,475.25 financed, that $420,000 was to be paid to GEMB Lending

3

Inc [DE 67-9].  After the Wachovia transaction closed, the Toranos stopped paying GEMB and started paying Wachovia.  On May 27 or May 28, 2008, Gigi Stetler sent GEMB certain followup information regarding the March 15 Substitution of Collateral. GEMB then released its lien on the 2007 RV after receiving title documentation from RV Sales.  The Toranos assert that Stetler told Diane Stone of GEMB to cancel the substitution of collateral.  In September of 2008, the 2007 RV was repossessed from RV Sales by GE Commercial, the floor-plan lender for RV Sales.[3]  The Toranos contend that after the execution of the Wachovia financing that RV Sales and Stetler were supposed to pay off GEMB from the loan proceeds, but instead, the Toranos are left with two loans for one RV, receiving bills from both GEMB and Wachovia.  See Affidavit of Wachovia Collections Manager Brian Murphy, ¶ 11 [DE 67-10].

    After the Toranos stopped paying GEMB, GEMB made a written demand upon RV Sales to repurchase the 2007 RV.  However, this demand letter had the wrong VIN number on it.  RV Sales and Stetler rely upon this mistake to take the position that GEMB never made a proper demand upon it to repurchase the 2007 RV (which had already been repossessed by RV Sales' floor plan lender), and therefore RV Sales has not breached its agreement with GEMB.

---

[3]  There was additional reference at the motion hearing by counsel for GEMB that RV Sales received credit of approximately $317,000 from GE Commercial for the value of the 2007 RV, which GE Commercial sold for $200,000 after taking possession. Deposition of Sara Seeburg, p. 35 [DE 67-7].  GE Commercial's representative testified that RV Sales received credit for the proceeds of the financing of the 2007 RV after its trade in.  Id., 19.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Each party has moved for summary judgment on all or part of their claims.  The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough

of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

## B.  GEMB's Claims against the Toranos

GEMB contends that there are no genuine issues of material fact that the Toranos have defaulted on their monetary obligation under the original Sales Contract and the Substitution of Collateral resulting in damages to GEMB.  Complaint, ¶¶ 28-29. There is no dispute that the original loan documents are valid and that the Toranos stopped paying GEMB in October of 2008.  However, the Toranos argue that RV Sales was an agent of GEMB for purposes of completing the paperwork necessary to pay off the GEMB loan, and that under the Federal Trade Commission's Holder Rule, the Toranos may assert any claims or defenses against GEMB that it could assert against the dealer, RV Sales.

### 1.  Actual Agency

The Toranos contend that RV Sales acted as an actual or apparent agent for GEMB.  To prove an actual agency relationship, a party must show: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." <u>Villazon v. Prudential Health Care Plan, Inc.</u>, 843 So. 2d 842, 853 n.10 (Fla. 2003), quoting <u>Goldschmidt v. Holman</u>, 571 So. 2d 422, 424 n. 5 (Fla. 1990).  It is the "right to control, rather than actual control, that may be determinative." <u>Villazon</u>, 843

6

So. 2d at 853, citing <u>Nazworth v. Swire Fla., Inc.</u>, 486 So. 2d 637, 638 (Fla. Dist. Ct. App. 1986).  The existence and scope of an agency relationship is generally a question of fact.  <u>Villazon</u>, 843 So. 2d at 853.

In this case, the Toranos rely upon the volume of business between GEMB and RV Sales (129 open loans totaling approximately $3 million at time of responses to interrogatories -- does not include closed loans), and the detailed Dealer Agreement that is the contract between those parties.  This evidence appears to suffice for the first two elements -- acknowledgment by the principal that the agent will act for him and the agent's acceptance of the undertaking -- but GEMB asserts that the Toranos have failed to show that GEMB controls the actions of RV Sales, noting that the Dealer Agreement expressly states in its first paragraph that the lender has the sole discretion to determine whether it should purchase the sales contract.  Dealer Non-Recourse Recreational Vehicle Financing Agreement, Exhibit 1 to Complaint [DE 1, p. 9].  GEMB also notes that its relationship with RV Sales is not exclusive, though that fact is irrelevant as multiple dealer agency relationships could exist.

The Toranos essentially conceded at the hearing that they are only asserting an apparent agency theory.  Based upon the record before the Court, the Court concludes that the Toranos have failed to show that there is a material issue of genuine fact regarding actual agency.

### 2.  Apparent Agency

An apparent agency can only exist "where the principal creates the appearance of an agency relationship."  Villazon, 843 So.2d at 855.  The elements of such a claim are: (1) a representation by the purported principal; 2) reliance on that representation by

7

a third party; and 3) a change in position by the third party in reliance on the representation."  Saralegui v. Sacher, Zelman et al., 19 So. 3d 1048, 1051-52 (Fla. Dist. Ct. App. 2009).  While it is clear that the Toranos have created at least a question of fact that they relied upon RV Sales and Stetler when refinancing the 2008 RV through Wachovia in order for the GEMB loan to be paid off, GEMB is correct that there is no evidence that GEMB made any representations to the Toranos regarding RV Sales' status as its agent.  Therefore, summary judgment on the issue of apparent agency is appropriate in favor of GEMB.

### 3.  Holder Rule

The FTC's Holder Rule was designed to protect consumers from unscrupulous dealers to avoid the precise situation present in this case -- the consumer's duty to pay existing independent of the seller's duty to fulfill his obligations.  Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 Fed. Reg. 20022, 20023 (May 14, 1976); Tinker v. De Maria Porsche Audi, Inc., 459 So.2d 487, 492 (Fla. Dist. Ct. App. 1984).  The Toranos contend that their fraud in the inducement and conversion claims against RV Sales and Stetler for taking the proceeds of the Wachovia 2008 loan for their own purposes and not paying off the Toranos' GEMB loan can become defenses to GEMB's claims against the Toranos.

GEMB argues that the FTC's Guidelines do not allow a consumer who has a claim against a dealer because of a separate transaction to assert such claim or defense against GEMB, as "the holder's obligations are limited to those arising from the transaction which he finances."  Id. at 20024.  GEMB contends that the Toranos' claims

against RV Sales and Stetler arise from the 2008 transaction, and therefore cannot be asserted against GEMB for non-payment of the 2007 transaction.[4]

The Toranos assert in their own motion for summary judgment against GEMB that the term "arising from" is given a wide interpretation. However, the published federal cases cited in support of this argument are all from the arbitration context. See Torano's Motion for Summary Judgment at p. 6 [DE 72]. The Toranos suggest that the Court should follow the arbitration cases as an analogous body of law. The Toranos further argue that the separate transaction exception applies to bar a consumer who purchases a second defective item from a dealer from asserting claims or defenses against the first lender. The Toranos contend that the term "transaction" as used in the FTC Holder Rule has a broader scope than merely the 2007 sales contract, citing to Florida law comparing the term "transaction" and "contract" in another context. Embrey v. Southern Gas & Elec. Corp., 63 So. 2d 258, 263 (Fla. 1953). Because the controversy here concerns the dealer's failure to pay off the Toranos' debt to GEMB, the Toranos assert that such failure to pay is part of the GEMB-Torano transaction.

A critical undisputed fact is that the RICSA financing agreement for the 2008 Loan and the Bill of Sale specifically direct that GEMB's loan be paid off from the proceeds of the Wachovia loan. Thus, the documents evidencing the 2008 loan link the two loans together into one transaction. This conclusion is further buttressed by the Substitution of Collateral agreement, which GEMB eventually signed on May 28, 2008

---

[4] GEMB also argues that the Toranos' motion for summary judgment is procedurally defective because they filed their motion after briefing was completed on GEMB's motion for summary judgment. The Court does not read Local Rule 7.1(c)(2) to prohibit the filing.

(albeit after Wachovia had already obtained a first lien).  Because of these documents, both loans clearly arose from the same transaction.

In the absence of case law directly on point, this Court concludes that the FTC Holder Rule should apply.  The intent of the Rule is to protect consumers by placing lenders such as GEMB in the position of policing dealers.  In this case the Toranos did nothing wrong -- they simply followed the suggestions of the dealer in replacing a mechanically unfit 2007 RV with a new 2008 RV, and then financed the second RV with the contractual obligation of the dealer on the face of the RICSA to pay off the first lender.  The evidence of itemization on the 2008 RICSA shows that RV Sales and the Toranos intended for the first loan balance to be paid off by the second loan, thus making the 2008 loan part of the same transaction as GEMB's 2007 loan, with the claims of conversion or fraud now part of the "transaction" between the Toranos and GEMB.  The Toranos' claims for fraud and/or conversion against RV Sales and Stetler may be asserted as defenses against GEMB because the payment to GEMB of the proceeds of the 2008 loan arose from the 2007 transaction.

### C.   Toranos' Claims Against RV Sales and Stetler

The Toranos assert that the plain language of their 2008 Bill of Sale and RICSA requires RV Sales (and Stetler) to pay off the 2007 GEMB loan balance with the proceeds of the loan financing the purchase of the 2008 RV [DE 68-10, p. 20].  The Toranos seek summary judgment on this claim, arguing that Stetler cannot defeat the plain language of the contract with claims that the parties had a special arrangement

whereby the 2007 RV would remain on RV Sales' lot to be sold on consignment, and the GEMB loan paid off when the RV was sold.   Deposition of Gigi Stetler at p. 87.

In their opposition to the Toranos' motion, RV Sales and Stetler state that the GEMB debt was extinguised and released on May 30, 2008, as confirmed by the Satisfaction of Lien Notification from the State of Florida.  Exhibit 1 to RV Sales and Gigi Stetler's Opposition to the Toranos' Motion for Summary Judgment [DE 84-1].  RV Sales also asserts (as it does in opposition to GEMB's motion) that: 1) it did protect GEMB's security interest in the 2007 RV by filing the appropriate Application for Certificate of Title, which application sets forth that GEMB was the lienholder; and, 2) GEMB received the subject title but chose to release its lien, serving to nullify its security interest.  However, these arguments are actually aimed at defending the action by GEMB against  RV Sales (discussed in next section), rather than the Toranos' claims against RV Sales and Stetler.

The only argument RV Sales and Stetler make that addresses the Toranos' claims against them is that the parties had engaged in a yearly trade-in of a motor home, whereby any negative balance would be owed by the Toranos until RV Sales sold the traded-in motor home.  This describes a "course of dealing" defense, which is plead as an affirmative defense to the Toranos' claims.  Answer and Affirmative Defenses of RV Sales and Gigi Stetler, ¶ 9 [DE 54].  The Court notes that at the hearing on this motion, counsel for RV Sales and Stetler, while repeating this argument, also made a point that the dispute is really between RV Sales and GEMB, and that the Toranos should be out of the case.

The Court need not decide whether counsel waived any defenses.  It is clear from this Court's review of the record that the plain meaning of the parties' contract is the best evidence of the parties' intent.  Rose v. M/V Gulf Stream Falcon, 186 F.3d 1345, 1350 (11th Cir. 1999) (interpreting Florida law).  In this case, the Bill of Sale and RICSA for the 2008 transaction, to which RV Sales is a party, state that the parties intended for $420,000 to be paid to GEMB.  Whatever course of dealing between RV Sales/Stetler and the Toranos existed before May 15, 2008 did not apply to the purchase and loan transaction for the 2008 RV based upon the clear statement in the Bill of Sale that it and any separate credit disclosure (RICSA) "shall include all of the terms and conditions, that this Order cancels and supercedes any prior agreement and as of this date hereof comprises the complete and exclusive statement of the terms of the agreement. . . ." [DE 67-8; 67-9].

These undisputed facts support the Toranos' claim for conversion.  The elements of conversion in Florida are: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein."  Special Purpose v. Prime One, 125 F.Supp.2d 1093, 1099-1100 (S.D. Fla. 2000) citing Warshall v. Price, 629 So.2d 903, 904 (Fla. 4th DCA 1993), rev. den., 641 So.2d 1346 (Fla. 1994).  In this case, RV Sales and Stetler wrongfully asserted control of the proceeds of the 2008 loan from Wachovia despite a specific legal obligation to send $420,000 to GEMB to pay off the 2007 loan.  Inconsistent with their lack of ownership of the $420,000, there is no dispute that they used funds that did not belong to them to pay off their own debts.[5]

---

[5]  This Court does not grant summary judgment to the Toranos on their other claims.  There are issues of material fact as to whether a fiduciary relationship exists

Therefore, the Court concludes that summary judgment is appropriate in favor of the Toranos on their conversion claim against RV Sales and Stetler.

### D.  Toranos' Motion for Summary Judgment as to GEMB

Having concluded that the Toranos are entitled to summary judgment on their conversion cross claim against RV Sales and third-party claim against Stetler, the Court concludes that the Toranos may assert the conversion claim as a defense to GEMB's breach of contract claim against them under the FTC Holder Rule.  The successful conversion claim is a complete defense to GEMB's breach of contract claim because the funds that would have paid off the 2007 loan were diverted by the dealer.   Thus, the Toranos are entitled to summary judgment against GEMB on GEMB's claim for breach of contract against the Toranos.

### E.  GEMB's claims against RV Sales

GEMB asserts that RV Sales breached the Dealer Agreement by failing to protect GEMB's security interest in the 2007 RV.  RV Sales and Stetler state in both their response and in their own cross-motion for summary judgment against GEMB that RV Sales did protect GEMB's security interest in the 2007 RV by filing the appropriate Application for Certificate of Title, which sets forth that GEMB was the lienholder.  RV Sales contends that GEMB received the subject title but chose to release its lien,

---

and whether fraud in the inducement occurred.  The Court assumes that the Toranos sued on an oral contract theory to avoid the arbitration clause that the Court later determined had been waived.  See Order Denying Motion to Stay or Dismiss [DE 52].

serving to nullify its security interest.  After the Toranos defaulted, GEMB mistakenly demanded that RV Sales repurchase the sales contract of a completely different 2007 RV.

GEMB agrees that RV Sales initially protected the security interest at the time of the origination of the loan in March of 2007.  However, RV Sales took action to eliminate that interest by initiating a further loan for the Toranos from Wachovia on May 15, and thereafter induced GEMB to prematurely release its lien.  GEMB also argues that RV Sales was on sufficient notice by the first demand to repurchase letter correctly identifying the customer and year of the 2007 RV.   GEMB contends that it made a second demand for RV Sales to repurchase the 2007 RV when it filed the Complaint, effectively curing any earlier scrivener's error.

Although both sides rely on the documents in this case for these cross-motions regarding GEMB's claims for breach of contract against RV Sales, the circumstances surrounding the communications between RV Sales and GEMB which resulted in the premature release of the lien are not clear, and therefore a genuine issue of material fact is present as to whether a breach of the Dealer Agreement occurred.


## III.   CONCLUSION

Although the Court grants the Toranos' motion for summary judgment in part, the Court cannot completely adjudicate the remainder of the Toranos' claims on summary judgment, nor the extent of their remedies.  The Toranos should include in the joint pretrial stipulation a statement as to what other claims and what remedies they are pursuing, given the rulings in this Order.  What remains to be tried either before a jury or

(if the parties consent) to the bench, are GEMB's claims for breach of contract against RV Sales, and any remaining issues concerning the Toranos' claims.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for Summary Judgment [DE 44] is hereby **DENIED**;

2.  RV Sales of Broward, Inc.'s Cross-Motion for Summary Judgment [DE 56/57] is hereby **DENIED**;

3.  Defendants/Counter-Plaintiffs Jaime and Danielle Torano's Motion for Summary Judgment [DE 72] is hereby **GRANTED in part**;

4.  Summary Judgment is hereby granted to the Toranos on GEMB's claim against the Toranos for breach of contract and on the Toranos' claim for conversion against RV Sales and Gigi Stetler;

4.  If the parties choose either to consent before the paired Magistrate Judge (whether jury or non-jury), or to try the case to the undersigned in a non-jury trial, they shall file a joint consent by Thursday, August 26, 2010.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 25th day of August, 2010.

JAMES I. COHN
United States District Judge

cc: All parties and counsel of record